IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM SCHWARTZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORP. | : | NO. 05-2340 |
| O'NEILL, J. | | JULY 28, 2005 |

MEMORANDUM

    Plaintiff, Adam Schwartz, filed a class action complaint on April 18, 2005 in the Pennsylvania Court of Common Pleas for Philadelphia County alleging that defendant, Comcast Corporation, breached its contract with plaintiff, was unjustly enriched, and violated Pennsylvania's Consumer Protection Law ("Pa.CPL") by failing to provide high speed internet service to various businesses and residents in Pennsylvania in violation of its express and implied promises in the subscription agreement: (1) to provide "service that was 'always on', 24 hours a day, 7 days per week, 365 days per year"; (2) not to charge for services not rendered; and (3) in the event payment was received for services not rendered, to issue refunds.  Defendant filed a notice of removal under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (2005).  Before me now is plaintiff's amended complaint and motion to remand, defendant's first response, plaintiff's reply, and defendant's second response thereto.[1]

---

[1] Defendant also filed a motion to compel arbitration and stay litigation to which plaintiff filed a motion to stay defendant's motion.  I will not address defendant's motion unless and until I determine that I have subject matter jurisdiction under CAFA.  Therefore, the parties stipulated, and I have ordered, that plaintiff's motion to stay defendant's motion was denied as moot and directed defendant to file a response to plaintiff's motion to remand.

1

BACKGROUND

Schwartz alleges in his original complaint that Comcast breached its contract with plaintiff and all class members by failing to deliver his speed internet services as promised during an eleven day period between April 7, 2005 and April 17, 2005 when Comcast's services were intermittent.  As a result, Schwartz alleges that he and all class members could not access the internet, and/or their access was interrupted and/or broken.  Specifically, Schwartz and the other class members could not enjoy internet service, upload or download information, engage in internet commerce, or send or receive email.  Schwartz further alleges that he and all class members paid for these services in advance.  Lastly, Schwartz alleges that the value of the lost services was between $7.00 and $15.00, depending on each class member's plan.

In his complaint, Schwartz defines the plaintiff class as:

> All persons and entities residing or doing business in the Commonwealth of Pennsylvania who subscribed to Comcast's high-speed internet service during the period [sic] April 7, 2004 to April 14, 2005.[2]  The class does not include major shareholders of Comcast, its executives, officers, directors or employees.

Schwartz's complaint did not discuss the citizenship of the plaintiff class.  Comcast filed a notice of removal on May 18, 2005 alleging that Comcast Corp. is a citizen of both Delaware and Pennsylvania because Comcast is a Delaware corporation with its principal place of business in Pennsylvania and asserting that this case is removable to this Court because plaintiff's class definition establishes the minimal diversity of citizenship contemplated by CAFA.  Schwartz subsequently amended his complaint on June 2, 2005 to allege that Schwartz and all class

---

[2] The period of time asserted by plaintiff in his class definition conflicts with the period of time alleged in the background portion of his complaint and that asserted in his first set of interrogatories.  I will assume that plaintiff intended to assert the time period of April 7, 2005 through April 17, 2005.

members are citizens of Pennsylvania and to define the plaintiff class as:

> All persons and entities who are citizens of the Commonwealth of Pennsylvania, who resided or did business in the Commonwealth of Pennsylvania, and who subscribed to Comcast's high-speed internet system for service in Pennsylvania during the period April 7, 2004 to and including April 14, 2005.[3]  A Subclass consists of those Class members who subscribed for personal, family or household purposes.  The class does not include major shareholders of Comcast, its executives, officers, directors or employees.

Thereafter, Schwartz filed the instant motion to remand arguing that this case does not meet the requirements for diversity jurisdiction under CAFA and Comcast fails to assert any federal law that would federal question jurisdiction.

## DISCUSSION

I.      Diversity Jurisdiction under the Class Action Fairness Act

Comcast argues that this case falls squarely within the purview of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (2005).  CAFA generally "permits defendants to remove certain class actions to federal court if minimal diversity of citizenship exists." Knudsen v. Liberty Mut. Ins. Co., 411 F.3d 805, 805 (7th Cir. 2005).  Specifically, CAFA provides that district courts shall have original jurisdiction of class actions where the number of members of the proposed plaintiff classes contain 100 or more members, Section 1332(d)(5), the aggregate[4] amount in controversy exceeds five million dollars, and at least one member of the plaintiff class

---

[3] Again, I note that the period of time asserted by plaintiff in his class definition conflicts with the period of time alleged in the background portion of his amended complaint.

[4] 28 U.S.C. § 1332(d)(6) provides: "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  CAFA thus abrogates the rule against aggregating claims to meet the jurisdictional limit. Exxon Mobil Corp. v. Allapattah Servs., Inc., Nos. 04-7 & 04-79, ___ U.S. ___, 125 S.Ct. 2611, at *2628 (June 23, 2005).

is diverse from at least one defendant, § 1332(d)(2).[5] Neither party disputes that CAFA's numerosity and amount in controversy requirements are met in this case. Comcast argues that Schwartz's broad class definition includes not only citizens of Pennsylvania, but also citizens of other states who are merely "doing business" in Pennsylvania or temporarily "residing" in Pennsylvania. Therefore, Comcast argues that this case is properly removed to this Court because "there is minimal diversity of citizenship and the aggregate alleged amount in controversy exceeds $5,000,000."

Schwartz argues in his motion to remand that CAFA excludes federal jurisdiction over this case because the class definition in his amended complaint falls within both the "home state controversy" and the "local controversy" exceptions. Under the "home state controversy" exception, district courts must decline to exercise jurisdiction where two thirds or more of the members of the proposed plaintiff classes, and the primary defendants, are citizens of the original filing state. § 1332(d)(4)(B). Similarly, under the "local controversy" exception, district courts must decline jurisdiction where four circumstances are met: (I) greater than two thirds of the members of the proposed plaintiff classes are citizens of the original filing state; (II) at least one defendant is a defendant from whom members of the proposed plaintiff class seek significant

---

[5] 28 U.S.C. § 1332(d)(2) provides:

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--
(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

relief, whose conduct alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the original filing state; (III) the principal injuries resulting from the alleged conduct of each defendant were incurred in the original filing state; and (IV) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the instant class action. § 1332(d)(4)(A).[6]

The amended complaint defines the class to be: "All persons and entities who are citizens of the Commonwealth of Pennsylvania, who resided or did business in the Commonwealth of Pennsylvania, and who subscribed to Comcast's high-speed internet system for service in Pennsylvania" during the relevant time period. Thus, the amended complaint defines the class as all persons or entities who meet three qualifications, those who: (1) are "citizens" of Pennsylvania; (2) "resided" or "did business" in Pennsylvania; *and* (3) subscribed to Comcast's high-speed internet service during the relevant time period. The amended complaint is clear that

---

[6]28 U.S.C. § 1332(d)(4) provides:

A district court shall decline to exercise jurisdiction under paragraph (2)--
(A)(i) over a class action in which--
(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
(II) at least 1 defendant is a defendant--
(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and
(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

all class members are citizens of Pennsylvania and, thus, more than two thirds of the class members are citizens of Pennsylvania and not diverse from Comcast.  Moreover, if all class members are Pennsylvania citizens that resided or did business in Pennsylvania and subscribed to Comcast's service, the principal injuries resulting from Comcast's alleged conduct would have been incurred in Pennsylvania.[7]  The class definition from the amended complaint clearly precludes diversity jurisdiction under the "home state controversy" and "local controversy" exceptions.

However, Comcast argues that Schwartz cannot rest upon the allegations of an amended complaint after Comcast has filed its notice of removal.  I agree.  "Generally speaking, the nature of plaintiff's claim must be evaluated, and the propriety of remand decided, on the basis of the record as it stands at the time the petition for removal is filed."  Westmoreland Hosp Ass'n v. Blue Cross of W. Pa., 605 F.2d 119, 123 (3d Cir. 1979) citing Pullman Co. v. Jenkins, 305 U.S. 534 (1939).  I will therefore base my determination "about subject matter jurisdiction after removal on the plaintiff's complaint as it existed at the time that the defendant filed the removal petition."  Briones v. Bon Secours Health Sys., 69 Fed. Appx. 530, 535 (3d Cir. 2003) quoting Prince v. Rescorp Realty, 940 F.2d 1104, 1105 n. 2 (7th Cir. 1991).  In other words, I will determine whether federal subject matter jurisdiction exists in this case according to the allegations set forth in Schwartz's original complaint.  Schwartz's attempt to "clarify" the definition of the proposed class in his amended complaint and thus eliminate diversity jurisdiction will not by itself defeat subject matter jurisdiction.  See Westmoreland, 605 F.2d at

---

[7]The parties do not assert or dispute that no other class action asserting the same or similar factual allegations has been filed against Comcast within the three years preceding the filing of this action.

6

123.  See also Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1995) (holding that plaintiff's stipulation that damages did not exceed jurisdictional amount "has no legal significance because a plaintiff following removal cannot destroy federal jurisdiction simply by amending a complaint that initially satisfied the monetary floor.").

Comcast argues that Schwartz's original complaint does not restrict its class members to citizens of Pennsylvania.  The original complaint defines the class as: "All persons and entities residing or doing business in the Commonwealth of Pennsylvania who subscribed to Comcast's high-speed internet service" during the relevant time period.  Thus, the original complaint defines the class as all persons or entities who meet only two qualifications, those who: (1) are "residing" or "doing business" in Pennsylvania; and (2) subscribed to Comcast's high-speed internet service during the relevant time period.  Being a citizen of Pennsylvania is not a qualification for class membership under the definition stated in the original complaint.  Schwartz argues that his allegations of "residence" of the proposed class members should be interpreted to mean "citizenship" because in Pennsylvania courts, where the original complaint was filed, it is not necessary to allege the parties' citizenship.  Citing McIntyre v. Nationwide Mut. Fire Ins. Co., No. 01-3746, 2001 WL 893697 (E.D. Pa. Aug. 6, 2001), Schwartz further argues that I "may assume that where a complaint alleges Pennsylvania residency, the plaintiff meant to allege Pennsylvania citizenship."  However, the Court of Appeals has held that allegations of plaintiffs' residence are not sufficient for purposes of establishing diversity of citizenship.  See, e.g., Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972) ("Where one lives is prima facie evidence

7

of domicile, but mere residency in a state is insufficient for purposes of diversity.").[8]  Moreover, McIntyre does not support plaintiff's claims.  In McIntyre, Judge Waldman cited numerous cases in line with Krasnov, but dismissed the case for lack of jurisdiction because plaintiffs failed to meet the jurisdictional threshold for amount in controversy.   McIntyre, 2001 WL 893697.  Hypothetically speaking, there may be numerous members of the proposed class who are citizens of different states but who resided or did business in Pennsylvania and subscribed to Comcast's high-speed internet service during the relevant time period.

However, I note that a removing defendant bears the burden of establishing federal court jurisdiction and that all doubts must be resolved in favor of remand.  See, e.g., Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).  This rule has not been altered by CAFA.  See In re Expedia Hotel Taxes and Fees Litig., No. 05-0365, 2005 WL 1706920, at *1 (W.D. Wash. Apr. 15, 2005); Sneddon v. Hotwire, Inc., No. 05-0952, 2005 WL 1593593, at *1 (N.D. Cal. Jun. 29, 2005).  Comcast asserts that CAFA's legislative history demonstrates Congress' intent to alter this rule and place the burden of proof with respect to jurisdiction on a remanding plaintiff.  In support of its argument, Comcast cites the Judiciary Committee's "Section by Section Analysis" from the Committee's Report in which it states:

> Overall, new section 1332 is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.

---

[8]This rule applies notwithstanding the language of the Fourteenth Amendment: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside," U.S. Const. amend. XIV, § 1. See Robertson v. Cease, 97 U.S. 646, 650 (1878) ("We perceive nothing in either the language or policy of the Fourteenth Amendment which requires or justifies us in holding that the bare averment of the residence of the parties is sufficient, *prima facie*, to show jurisdiction.").

>As noted above, it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should bear the burden of demonstrating that a case should be remanded to state court (e.g., the burden of demonstrating that more than two-thirds of the proposed class members are citizens of the forum state). Allocating the burden in this manner is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members. The law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot "oust" the federal court of jurisdiction. [See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 293 (1938).] While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proper class in particular ways, they lose that power once a defendant has properly removed a class action to federal court.
>
>\* \* \*
>
>It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. Thus, if a plaintiff seeks to have a class action remanded under section 1332(d)(4)(A) on the ground that the primary defendants and two-thirds or more of the class members are citizens of the home state, that plaintiff shall have the burden of demonstrating that these criteria are met by the lawsuit.

Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 42-44 (1st Sess. 2005), reprinted in 2005 U.S.C.C.A.N. 3, 2005 WL 627977. These sentiments were echoed by Representative Sensenbrenner, 151 Cong. Rec. H727-730, and Representative Goodlatte, Id. at H732, in the House of Representatives.

Comcast also directs my attention to a case from the Central District of California, Berry v. Am. Express Publ'g Corp., No. 05-0302 (Jun. 16, 2005) (Stotler, J.) (unpublished). In Berry, Judge Stotler interpreted CAFA's legislative history--specifically the Judiciary Committee Report--to hold that CAFA has shifted the burden of proof to the party seeking remand. Acknowledging that "determining legislative 'intent' is a process not without the potential for selective interpretation, where the statute does not squarely address the issue," Judge Stotler determined that "legislative history is an essential tool for statutory interpretation." Id. at 6.

Finding support in the Supreme Court's opinion in Garcia v. United States, 469 U.S. 70, 76 (1984), and an opinion from the Court of Appeals for the Ninth Circuit in City of Edmonds v. Wash. State Bldg. Code Council, 18 F.3d 802, 805 (9th Cir. 1994), Judge Stotler held that the Judiciary's "Committee Reports as "'the authoritative source for finding the Legislature's intent,' and may be consulted as one important resource in the quest for faithful statutory interpretation." Id. quoting Garcia, 469 U.S. at 76. In support of this conclusion, Judge Stotler added:

> First, a statute cannot address all possible outcomes and situations, and language inevitably contains some imprecision; where the text does not provide a clear answer, a faithful interpretation of the statute necessarily involves more than the text itself. Second, if legislative intent is clearly expressed in Committee Reports and other materials, judicial disregard for the explicit and uncontradicted statements contained therein may result in an interpretation that is wholly inconsistent with the statute that the legislature envisioned. Where the source of legal authority is statutory and not constitutional, such as with the diversity statute, Congress retains the ability to create and direct the law, so long as it is consistent with constitutional principles, and it is particularly important for the Court to follow that directive. Where both plaintiffs' and defendants' interpretations of the burden of proof . . . are constitutionally permissible, the role of the Court is to faithfully implement the law as intended by the Legislature. In these circumstances the legislative history is a proper tool of statutory interpretation.

Id. at 6-7. With this statutory interpretation framework in place, Judge Stotler found that "the Committee Report expresses a clear intention to place the burden of removal [sic] on the party opposing removal to demonstrate that an interstate class action should be remanded to state court." Id. at 7-8. Rejecting plaintiffs' arguments "that the failure to incorporate this directive evinces an explicit intent to maintain the status quo," Judge Stotler held that "this contention cannot be squared with the uncontradicted statements contained in the Committee Report." Id. at 8. Judge Stotler further opined:

> Although the lack of any burden-shifting provisions may be an opaque means of preserving the status quo . . . it is equally possible that it was due to legislative oversight, the inability of the Legislature to foresee, or for statutes to address all circumstances. Alternatively, and more plausibly, the failure to address the burden of proof in the statute

10

> reflects the Legislature's expectation that the clear statements in the Senate Report would be sufficient to shift the burden of proof. The Court notes, with some irony, that the original diversity statute does not contain any reference to the burden of proof. Plaintiff fails to explain how the failure to incorporate the burden of proof in Section 1332(d) should be assigned more or less meaning than the failure to incorporate any burden of proof in the original text.

Id. Judge Stotler thus concluded that "the failure to explicitly legislate changes on the burden of proof in interstate class actions has little interpretive value." Id. Judge Stotler also observed "that her interpretation is consistent with the tradition of placing the burden on the moving party." Id. at 9.

I respectfully disagree with Judge Stotler. I am guided by Justice Jackson's concurrence in Schwegmann Bros.: "Resort to legislative history is only justified where the face of the Act is inescapably ambiguous." Garcia, 469 U.S. at 77 quoting Schwegmann Bros. v. Calvert Distillers Corp. 341 U.S. 384, 395-96 (1951) (Jackson, J. concurring). See also In re First Merchants Acceptance Corp., 198 F.3d 394, 402 (3d Cir. 2000) ("Supreme Court cases declaring that clear [statutory] language cannot be overcome by contrary legislative history are legion.") (citing Supreme Court cases). "Where the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result." Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 202 (1998). I do not find Section 1332(d) to be ambiguous and or to produce an absurd result because it is consistent with Courts' long standing application of the burden of proof for establishing diversity jurisdiction.

The Supreme Court has frequently held that Congress is presumed to be aware of existing law when it passes legislation. See, e.g., Ankenbrandt v. Richards, 504 U.S. 689, 700-01 (1992); Lindahl v. Office of Personnel Mgmt., 470 U.S. 768, 802-03 (1985); Comm'r of Internal

11

Revenue v. Engle, 464 U.S. 206, 225 (1984); Lorillard v. Pons, 434 U.S. 575, 580-581 (1978); "[W]here, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." Lindahl, 470 U.S. at 783 n. 15 quoting Lorillard, 434 U.S. at 580-581; Scheidemann v. INS, 83 F.3d 1517, 1525 (3d Cir. 1996); James v. O'Bannon, 715 F.2d 794, 805 (3d Cir. 1983). Therefore, by enacting new Section 1332(d), Congress is presumed to have been familiar with the longstanding and well known case law construing old Section 1332. In fact, the Judiciary Committee Report demonstrates that at least the Judiciary Committee had a sophisticated understanding of case law regarding diversity jurisdiction, removal, remand, and their alleged abuses. See Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 7-12 (1st Sess. 2005), reprinted in 2005 U.S.C.C.A.N. 3, 2005 WL 627977. I cannot assume that, with the Judiciary Committee's understanding of the operation of diversity jurisdiction, Congress was unaware that Courts have uniformly placed the burden of proof on a removing defendant. See Lorillard, 434 U.S. at 585.

The Supreme Court instructs that "a court may depart from the plain language of a statute only by an extraordinary showing of a contrary congressional intent in the legislative history." Idahoan Fresh, 157 F.3d at 202 citing Garcia,, 469 U.S. at 75. Moreover, with a plain, nonabsurd construction of a statute in view, I need not construe this statute in a manner that would enlarge its meaning "so that what was omitted, presumably by inadvertence, may be included within its scope." Lamie v. United States, 540 U.S. 526, 538 (2004). I am, therefore, hesitant to read into the statute a Congressional intent to shift the longstanding burden of proof for establishing diversity jurisdiction, where Congress expressly enacted numerous other intended changes

12

discussed by the Judiciary Committee in its Report to the exclusion of the change with respect to the burden of proof.  For example, the Judiciary Committee Report suggests that Congress was also interested in aggregating individual class members' claims to meet the five million dollar amount in controversy limit, see Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 42-43 (1st Sess. 2005), reprinted in 2005 U.S.C.C.A.N. 3, 2005 WL 627977.  Following through on this intent, Congress expressly abrogated the rule against aggregating claims in class actions to meet the jurisdictional limit.  See § 1332(d)(6); Exxon Mobil Corp. v. Allapattah Servs., Inc., Nos. 04-7 & 04-79, ___ U.S. ___, 125 S.Ct. 2611, at *2628 (June 23, 2005).  In contrast, Congress failed to expressly abrogate the rule with respect to the burden of proof in establishing diversity jurisdiction.  I can draw only one conclusion from this omission: by making substantive changes with respect to the aggregation rule, but failing to express a concomitant change in the burden of proof, Congress implicitly acknowledged and adopted the longstanding rule that a removing defendant bears the burden of proof for establishing diversity jurisdiction.[9]

      Had Congress intended to make a change in the law with respect to the burden of proof, it would have done so expressly in the statute.  "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent.  It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think is the preferred result."  Lamie, 540 U.S. at 542.  I therefore hold that, notwithstanding its

---

[9]This interpretation is consistent with the canon *expressio unius est exclusio alterius*: "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987); Singh-Kaur v. Ashcroft, 385 F.3d 293, 299 (3d Cir. 2004).

legislative history, CAFA does not shift the burden of proof from a removing defendant to a remanding plaintiff.[10]

In the instant case, Comcast has control over the information that would establish the citizenship of the various members of Schwartz's proposed class. I will, therefore, allow Schwartz to engage in limited discovery with respect to this jurisdictional question.[11] I note that Schwartz served Comcast with his first set of interrogatories on June 28, 2005. Referring to the time period April 7, 2005 to April 17, 2005, Schwartz requests Comcast to state the number of subscribers: (1) "receiving internet service from Comcast in the Commonwealth of Pennsylvania"; (2) for whom "the billing address for such internet service is the same as the address where such service is provided"; and (3) for whom "the billing address is not the same as the address where such service is provided." Comcast has not answered these interrogatories. It is not clear that these interrogatories are sufficiently tailored to lead to discovery of the citizenship of plaintiff's proposed class members as of the date the complaint was filed. See § 1332(d)(7).[12] I will, therefore, order Schwartz to amend these interrogatories within ten business

---

[10]Comcast also argues that allocating the burden to Schwartz is consistent with the burden of proof under the abstention doctrines (Burford, Colorado River, Pullman, Thibodaux, and Younger). Cf. Chiropractic Am. v. Lavecchia, 180 F.3d 99, 103 (3d Cir. 1999); Kentucky W. Va. Gas Co. v. Pa. Public Utility Comm'n, 791 F.2d 1111, 1114 (3d Cir. 1986); Bell Atlantic-Pennsylvania, Inc. v. Pa. Public Utility Comm'n, 107 F. Supp. 2d 653, 664 (E.D. Pa. 2000); Synagro-WWT, Inc. v. Rush Twp., 204 F. Supp. 2d 827, 835 (M.D. Pa. 2002); Capital Bonding Corp. v. N.J. Sup. Ct., 127 F. Supp. 2d 582, 591 (D. N.J. 2001).

[11]The Court of Appeals has held that "jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'" Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997). Schwartz's claim is not clearly frivolous and discovery is necessary to determine whether jurisdiction is proper in this Court.

[12]28 U.S.C. § 1332(d)(7) provides:

Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of

days of this memorandum and Order. Comcast will serve a copy of its answers within twenty business days of service of the interrogatories in accordance with Federal Rule of Civil Procedure 33(b)(3). Either party may seek the permission of this Court for an extension of time to serve or answer these interrogatories.[13]

II. Federal Question Jurisdiction

In the alternative, Comcast asserts that I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337. Comcast asserts federal question jurisdiction under the Community

---

paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

[13]Neither party has asserted the discretion given to district courts under CAFA to decline to exercise jurisdiction where one third but less than two thirds of the members of the proposed plaintiff classes and the primary defendants are citizens of the state in which the class action was originally filed. § 1332(d)(3). However, should jurisdictional discovery reveal that greater than one third but less than two thirds of plaintiff class members are citizens of Pennsylvania, CAFA instructs that I consider the interests of justice and the totality of the circumstances in determining whether to exercise jurisdiction. Id. Specifically, I will consider six factors:

> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

Id.

Decency Act, 47 U.S.C. § 230(b).[14] Comcast alleges that Schwartz's complaint is "a direct assault on Congress's decision to free the Internet from state regulation" and "a direct challenge to the federal government's exclusive regulation of Internet services."[15] Therefore, Comcast argues, Schwartz's claims are inherently federal in character and jurisdiction is proper under: "(a) the complete preemption doctrine; (b) the substantial federal question doctrine; and (c) the artful pleading doctrine."[16]

Initially, I note that defense counsel has litigated substantially the same issues with respect to removal of a class action concerning cable television services on behalf of Comcast before Judge Padova one year ago. See Thibodeau v. Comcast Corp., No. 04-1777, 2004 WL 2367828 (E.D. Pa. Oct. 21, 2004) (Padova, J.). Judge Padova discussed the law of this Circuit

---

[14]Section 230(b) provides:

It is the policy of the United States--
(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;
(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;
(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;
(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and
(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

[15]To the extent that there are any claims governed by state law, Comcast asserts supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

[16]Comcast also argues that Schwartz has no viable state law claim, citing Kaplan v. Cablevision of Pa., Inc., 671 A.2d 716 (Pa. Super. Ct. 1996). I will not determine whether Schwartz's claims under Pennsylvania law may proceed unless and until I determine that I have subject matter jurisdiction in this case.

16

with respect to federal preemption in that case. I agree with Judge Padova's analysis and, rather than repeating it here, I direct the parties to his memorandum and Order.

Section 230(b) does not create a federal cause of action; it merely states the United States' policies behind its regulation of the internet and interactive computer services. Comcast admits this fact: "Comcast is not suggesting that Plaintiff has violated the CDA, or that it provides him with a cause of action in this case. But it does establish the general policy of the United States to 'unfetter' the Internet from state regulation." Def's Opposition to Pl.'s Mot. to Remand at 15, n. 14. Because neither Section 230(b) nor any other federal law creates a cause of action within the scope of Schwartz's breach of contract and Pennsylvania Consumer Protection Law claims and because Section 230(b) does not evince any intent on behalf of Congress to make any such non-existent cause of action exclusive, Schwartz's claims are not completely preempted by Section 230(b). See Thibodeau, 2004 WL 2367828, at *4-6. Similarly, because neither Section 230(b) nor any other federal law is a necessary element of Schwartz's case or at the forefront of this case, Schwartz's claims are not substantial federal questions.[17] See id. at *6-7. Finally, because the artful pleading doctrine does not create a separate removal doctrine and because Schwartz has not "artfully pled" his complaint in an attempt to avoid federal question jurisdiction, the nature of plaintiff's claims do not provide an independent justification for federal question jurisdiction. See id. at *4, n. 2.

I reserve judgment as to whether Schwartz is entitled to attorneys' fees and costs under 28 U.S.C. § 1447(c).

---

[17]I also note that the substantial federal question doctrine has been called into doubt in the wake of the Supreme Court's holding in Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003). See Thibodeau, 2004 WL 2367828, at *6 (citing cases).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM SCHWARTZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORP. | : | NO. 05-2340 |

ORDER

AND NOW, this 28th day of July 2005, upon consideration of plaintiff's amended complaint and motion to remand, defendant's first response, plaintiff's reply, and defendant's second response thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED as follows:

1. Plaintiff will serve amended interrogatories on defendant within ten business days of this Order. Plaintiff will properly tailor the amended interrogatories to lead to discovery of the citizenship of plaintiff's proposed class members as of the date the complaint was filed.

2. Defendant will answer plaintiff's amended interrogatories within twenty business days after service thereof pursuant to Federal Rule of Civil Procedure 33(b)(3).

                                                    s/ Thomas N. O'Neill, Jr.
                                                    THOMAS N. O'NEILL, JR., J.