IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM SCHWARTZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORP. | : | NO. 05-2340 |

O'NEILL, J.                                                              FEBRUARY 28, 2006

## MEMORANDUM

Plaintiff, Adam Schwartz, filed a class action complaint on April 18, 2005 in the Court of Common Pleas for Philadelphia County alleging that defendant, Comcast Corporation, breached its contract with plaintiff, was unjustly enriched, and violated Pennsylvania's Consumer Protection Law by failing to provide high speed internet service to various businesses and residents in Pennsylvania in violation of its express and implied promises in the subscription agreement: (1) to provide "service that was 'always on', 24 hours a day, 7 days per week, 365 days per year"; (2) not to charge for services not rendered; and (3) in the event payment was received for services not rendered, to issue refunds.  Defendant filed a notice of removal under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (2006).  Thereafter, plaintiff filed an amended complaint and motion to remand.

I subsequently held in my memorandum and Order of July 28, 2005 that the issue of subject matter jurisdiction must be determined according to allegations of citizenship set forth in plaintiff's original complaint and that, notwithstanding its legislative history, CAFA did not shift the long standing burden of proof from a removing defendant to a remanding plaintiff.  <u>Schwartz v. Comcast Corp.</u>, No. 05-2340, 2005 WL 1799414 (E.D. Pa. Jul. 28, 2005).  I also found that plaintiff's first set of interrogatories was not sufficiently tailored to lead to the discovery of the

citizenship of plaintiff's proposed class members. Id.  I therefore ordered plaintiff to amend these interrogatories and serve them upon defendant. Id.

Having dispensed with defendant's motion for partial reconsideration in my Order of December 8, 2005, I now consider plaintiff's motion to remand in light of: (1) the discovered evidence with respect to the citizenship of the plaintiff proposed class members, attached to plaintiff's response to defendant's motion for partial reconsideration (Docket Nos. 19 and 20); (2) plaintiff's arguments that the evidence does not support minimal diversity and that the Court should decline to exercise its jurisdiction, discussed on pages 9-13 of plaintiff's response (Docket No. 19); (3) defendant's arguments that remand is not appropriate irrespective of the burden of proof, discussed on pages 6-12 of defendant's reply (Docket No. 21); (4) plaintiff's supplemental memorandum in support of remand (Docket No. 23); and (5) defendant's supplemental brief in opposition to plaintiff's motion to remand (Docket No. 24).  The facts of this case are discussed in my memorandum and Order of July 28, 2005.

## STANDARD OF REVIEW

The Court of Appeals has held that "[t]he party asserting jurisdiction bears the burden of showing the action is properly before the federal court" and that "[t]he statute governing removal, 28 U.S.C. § 1441, must be strictly construed against removal." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005).  The burden of establishing removal jurisdiction therefore rests with the removing defendant, here Comcast.  CAFA has not altered this longstanding rule. Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005).

DISCUSSION

Comcast argues that remand is not proper in this case because the limited class discovery demonstrates that less than one third of plaintiff's putative class members are citizens of the same state. See 28 U.S.C. § 1332(d)(2)-(3) (2006). Schwartz argues that I should decline to exercise jurisdiction because the discovery shows that more than two thirds of the class are Pennsylvania citizens. I conclude that subject matter jurisdiction is proper in this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (2005), because I find the evidence to show that less than one third of plaintiff's class are citizens of Pennsylvania.

CAFA generally "permits defendants to remove certain class actions to federal court if minimal diversity of citizenship exists." Knudsen v. Liberty Mut. Ins. Co., 411 F.3d 805, 805 (7th Cir. 2005). Specifically, CAFA provides that district courts shall have original jurisdiction of class actions in which: (1) the number of members of the proposed plaintiff classes contain 100 or more members, § 1332(d)(5); (2) the aggregate amount in controversy[1] exceeds five million dollars; and (3) at least one member of the plaintiff class is diverse from at least one

---

[1] 28 U.S.C. § 1332(d)(6) provides: "In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." CAFA thus abrogates the rule against aggregating claims to meet the jurisdictional limit. Exxon Mobil Corp. v. Allapattah Servs., Inc., Nos. 04-7 & 04-79, ___ U.S. ___, 125 S.Ct. 2611, at *2628 (June 23, 2005).

defendant, § 1332(d)(2).[2]  Neither party disputes that CAFA's numerosity, amount in controversy, and minimal diversity requirements are met in this case (at least one class member is diverse from Comcast).  Comcast argues that Schwartz's broad class definition includes not only citizens of Pennsylvania, but also citizens of other states who are merely "doing business" in Pennsylvania or temporarily "residing" in Pennsylvania.  Therefore, Comcast argues that this case is properly removed to this Court because "there is minimal diversity of citizenship and the aggregate alleged amount in controversy exceeds $5,000,000."

However, CAFA provides for three exceptions to the general diversity rule.  Under the so called "home state controversy" exception, district courts must decline to exercise jurisdiction where two thirds or more of the members of the proposed plaintiff classes, and the primary defendants, are citizens of the original filing state.  § 1332(d)(4)(B).  Similarly, under the so called "local controversy" exception, district courts must decline jurisdiction where four circumstances are met: (I) greater than two thirds of the members of the proposed plaintiff classes are citizens of the original filing state; (II) at least one defendant is a defendant from whom members of the proposed plaintiff class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the original filing state;

---

[2] 28 U.S.C. § 1332(d)(2) provides:

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--
(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

(III) the principal injuries resulting from the alleged conduct of each defendant were incurred in the original filing state; and (IV) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the instant class action. § 1332(d)(4)(A).[3]  Under the so called "interests of justice" exception district courts may, "in the interests of justice and looking at the totality of the circumstances," decline to exercise jurisdiction over a class actions in which greater than one-third but less than two-thirds of the total members of all proposed plaintiff classes and the primary defendants are citizens of the State in which the action was originally filed.  In considering the interests of justice and examining the totality of the circumstances, district courts are guided by six factors:

>    (A) whether the claims asserted involve matters of national or interstate interest;
>    (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>    (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>    (D) whether the action was brought in a forum with a distinct nexus with the class

---

[3] 28 U.S.C. § 1332(d)(4) provides:

A district court shall decline to exercise jurisdiction under paragraph (2)--
(A)(i) over a class action in which--
(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
(II) at least 1 defendant is a defendant--
(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and
(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

>members, the alleged harm, or the defendants;
>(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

§ 1332(d)(3). Schwartz argues that CAFA excludes federal jurisdiction over this case because the class definition in his amended complaint falls within the "home state controversy," "local controversy," or "interests of justice" exceptions.

In his complaint, Schwartz defined the plaintiff class as: "All persons and entities residing or doing business in the Commonwealth of Pennsylvania who subscribed to Comcast's high-speed internet service during the period April 7, 2004 to April 14, 2005." Being a citizen of Pennsylvania is not a qualification for class membership under the definition stated in the original complaint. As discussed in my July 28, 2005 memorandum and Order, Schwartz's allegations of residence are not sufficient for purposes of establishing citizenship. See, e.g., Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972) ("Where one lives is prima facie evidence of domicile, but mere residency in a state is insufficient for purposes of diversity.").[4]

Hypothetically speaking, there may be numerous members of the proposed class who are citizens of different states but who resided or did business in Pennsylvania and subscribed to Comcast's high-speed internet service during the relevant time period. Comcast therefore argues

---

[4]This rule applies notwithstanding the language of the Fourteenth Amendment: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside," U.S. Const. amend. XIV, § 1. See Robertson v. Cease, 97 U.S. 646, 650 (1878) ("We perceive nothing in either the language or policy of the Fourteenth Amendment which requires or justifies us in holding that the bare averment of the residence of the parties is sufficient, *prima facie*, to show jurisdiction.").

three points: (1) that no reasonable amount of discovery could possibly reveal with precision the number of those subscribers who were "doing business" or "residing" in Pennsylvania during the relevant time period; (2) that the facts reveal that the putative class, as defined by Schwartz, would likely be comprised predominantly of non-Pennsylvania citizens; (3) that this case involves a nationwide internet service disruption, not a local controversy.

With respect to its first argument, Comcast argues the CAFA's legislative history states that in making jurisdictional determinations "a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes." Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14, at 44 (1st Sess. 2005). The Senate Judiciary Committee acknowledged that "in some instances, limited discovery may be necessary to make these determinations" but cautioned that "these jurisdictional determinations should be made largely on the basis of readily available information." Id. In the Committee's view:

> Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions. For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified. Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.

Id. Comcast thus argues that any attempt to ascertain the precise composition of the putative class would require a Herculean undertaking and the parties and the Court should not be

conducting mini-trials to determine individual class members' citizenship.[5]  Although I am cautious about relying upon this legislative history, as discussed in my memorandum and Order of July 28, 2005, I will make a jurisdictional determination based upon the evidence available at this stage of the litigation.

With respect to its second argument, Comcast argues that the evidence demonstrates that less than one third of the putative class are citizens of Pennsylvania.  A person is considered a citizen of a state if that person is domiciled within that state and is a citizen of the United States.  See generally, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 13B Federal Practice & Procedure § 3611, at 507.  For purposes of determining diversity, state citizenship of a natural person is treated as synonymous with domicile.  Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972).  Domicile, however, is not necessarily synonymous with residence; one can reside in one place and be domiciled in another.  Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989); Krasnov, 465 F.2d at 1300 ("Where one lives is prima facie evidence of domicile, but mere residency in a state is insufficient for purposes of diversity.") (internal citations omitted).

---

[5]Comcast also argues that Schwartz's claims are barred as a matter of law because the language of the subscriber agreement disclaims any promise of uninterrupted service and provides remedies only in the event of twenty four hour service disruptions.  See Kaplan v. Cablevision of Pa., Inc., 671 A.2d 716, 720 (Pa. Super. Ct. 1996) (affirming dismissal of claims stemming from interruption of cable services because parties' subscriber agreement contained no "provisions which suggest that the [defendants] obligated themselves to provide continuous, uninterrupted service or to automatically provide rebates for interruptions in service"); Shapiro v. Comcast Corp., No. MIS-L-2034-02 (Sup. Ct. N.J. Oct. 14, 2003); Mentzel v. Comcast, No. 02-038569-CP (Mich. Cir. Ct. Jul. 7, 2003).  I will not discuss the merits of this case without first determining whether I have subject matter jurisdiction.

Two elements typically are necessary to establish domicile: (1) residence; and (2) an intent to make the place of residence one's home. Krasnov, 465 F.2d at 1300. Thus, a person normally acquires a domicile voluntarily by residing in a place with an intention to remain there indefinitely. Id. at 1300-01; Federal Practice & Procedure § 3612, at 526 ("It is often said that the domicile of a person is the place where an individual has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.").

Comcast asserts that the evidence shows that it has approximately 8,142,000 internet subscribers in the United States and that a large number of these subscribers could be considered either to be "residing" or "doing business" in Pennsylvania. Comcast also asserts that there are approximately 200,000 citizens of other states who are "doing business" in Pennsylvania by commuting to work in Pennsylvania and countless numbers of citizens from other states who are "doing business" with Pennsylvania via the internet. Comcast thus argues that "[b]ecause Comcast provides Internet service to over 8,000,000 subscribers nationwide, the number of putative class members 'doing business' in Pennsylvania from other states likely *dwarfs* the number of subscribers who 'received service in Pennsylvania.'" (emphasis by defendant). By contrast, Schwartz focuses on Comcast's residential subscribers and argues that at least 84 % of the putative class are domiciled in and citizens of Pennsylvania.[6]

In regard to residence, Schwartz argues that because Comcast's Service Subscriber Agreement provides that residential service is delivered to the customer's residence 98 % of the

---

[6]The parties have stipulated to treating the discovered jurisdictional information as confidential and have filed their briefs and attached evidence under seal because Comcast believes this commercial information to be highly sensitive and an unfair insight into its business operations for its competitors. Therefore, I have placed this information in a sealed appendix to this memorandum and Order.

"residential service customers were also Pennsylvania residents, and almost all of them conducted their personal business affairs here in Pennsylvania." Comcast does not dispute the residence of the putative class. In regard to intent, Schwartz argues that because 86.5 % of the class members maintained Comcast service over a five month period they intended to remain resident in Pennsylvania. Accordingly, Schwartz argues that these class members were domiciled in and, thus, citizens of Pennsylvania.

      The determination of a person's domicile is a fact specific question. In addition to one's residence, courts frequently consider a number of nonconclusive factors, including: (1) voting registration and voting practices; (2) location of personal and real property; (3) location of brokerage and bank accounts; (4) membership in unions, fraternal organizations, churches, clubs, and other associations; (5) place of employment or business; driver's license and automobile registration; and (6) payment of taxes. Krasnov, 465 F.2d at 1301; Federal Practice & Procedure § 3612, at 530-31. Although neither party has asserted any of these specific factors, Schwartz appears to argue that a subscriber's decision to maintain Comcast service at their Pennsylvania residence is indicative of his or her intent to remain in Pennsylvania indefinitely.

      I disagree. The factors described above are suggestive of an intent to remain in a certain state and, thus, domicile, because they are features of a permanent residence. Typically, one does not vote/register to vote, purchase personal and real property, open brokerage and bank accounts, join associations, or become employed or open a business unless one intends to remain in that state indefinitely. Unlike those factors, a subscription to internet service is not indicative of an intent to remain permanently in a state. Internet service has become a standard necessity in many individuals' homes; one subscribes to internet service in much the same way that one orders

10

telephone, electric, cable, gas, water, and other services upon moving into a house or apartment. None of these standard services is suggestive of an intent to remain in a specific state. One need only look at the hundreds of thousands of out of state students at Pennsylvania's colleges and universities who maintain internet service (as well other necessary services) over the course of four years but only intend to remain in Pennsylvania during the period of their education. An intent to maintain internet service does not suggest an intent to remain permanently in one state.

Schwartz adds three other strings to his bow. First, he argues that "the very fact that the class received [residential] high speed internet service at locations in Pennsylvania is evidence of domicile [because] [b]y its nature, high speed internet service involves a permanent and fixed setup, rather than one that is mobile or transient." This argument is discounted quickly because the required hardware for internet access (cable and/or telephone lines) is a standard feature of most homes. Second, he asserts that, according to the United States Census Bureau studies of population mobility, only 2 to 3 % of the population changes residence to a different state each year to suggest that the other 97 to 98 % of the population intends to remain in the same state. However, the annual population shift has no bearing on the intent of the other 97 to 98 % to remain in a specific state indefinitely. The 97 to 98 % of the population may remain in one state for many years without any intent to remain there permanently. Third, he argues that of the approximate 2 % of persons or entities receiving nonresidential service in Pennsylvania "[i]t is unlikely that all of these non-residential customers are also non-Pennsylvania citizens." There is no evidence to support this argument.

In sum, each of Schwartz's arguments is premised on the assumption that residence is an effective proxy for domicile. I decline to draw such a parallel. See Krasnov, 465 F.2d at 1300

11

("[M]ere residency in a state is insufficient for purposes of diversity."). Absent evidence of any factor that bears on the class members' intent to remain in Pennsylvania, I am unable to determine the domicile of plaintiff's residential class members. Moreover, Schwartz appears to assume that only class members who subscribe to Comcast's nonresidential internet service in Pennsylvania could be considered to be Comcast internet subscribers that are "doing business" in Pennsylvania. Because of this assumption, Schwartz fails to address the millions of Comcast internet subscribers across the nation that are not Pennsylvania citizens and could be considered to be "doing business" in Pennsylvania. Even discounting Comcast's assertion--that the April internet service disruption affected over eight million of its customers nationwide--for those subscribers who cannot be considered to be "doing business" in Pennsylvania and taking at face value Schwartz's assertion--that the 98% of residential service customers are citizens of Pennsylvania--I find it most likely that the putative class comprises less than one third of Comcast's nationwide subscribers that could be considered to be "residing" or "doing business" in Pennsylvania. Federal jurisdiction is further supported by a national interest in protecting the millions of citizens from many states whose contractual rights were allegedly violated by Comcast's nationwide service disruption. Subject matter jurisdiction in this Court is proper under CAFA and Schwartz's motion to remand will be denied.

I need not address Schwartz's arguments that remand is appropriate under the "home state controversy" exception (requires "two-thirds or more" of putative class be citizens of same state, § 1332(d)(4)(B)), "local controversy" exception ("greater than two-thirds," § 1332(d)(4)(A)), or "interests of justice" exception ("greater than one-third but less than two thirds," § 1332(d)(3)) because I conclude that less than one third of the putative class members are citizens of Pennsylvania. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM SCHWARTZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORP. | : | NO. 05-2340 |

ORDER

AND NOW, this 28th day of February 2006, upon consideration of plaintiff's motion to remand, in light of the evidence with respect to the citizenship of the plaintiff proposed class members (attached to plaintiff's response), plaintiff's response to defendant's motion for partial reconsideration and defendant's reply thereto, plaintiff's supplemental memorandum in support of remand, and defendant's supplemental brief in opposition thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that plaintiff's motion to remand is DENIED.

s/ Thomas N. O'Neill, Jr.
THOMAS N. O'NEILL, JR., J.
