IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM SCHWARTZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMCAST CORP. | : | NO. 05-2340 |

O'NEILL, J.                                                                                                                                      NOV. 8, 2006

MEMORANDUM

     Plaintiff Adam Schwartz filed a class action complaint on April 18, 2005 in the Court of Common Pleas for Philadelphia County alleging that defendant Comcast Corporation breached its contract with plaintiff, was unjustly enriched, and violated Pennsylvania's Consumer Protection Law by failing to provide high speed internet service to various businesses and residents in Pennsylvania in violation of its express and implied promises: (1) to provide "service that was 'always on', 24 hours a day, 7 days per week, 365 days per year"; (2) not to charge for services not rendered; and (3) in the event payment was received for services not rendered, to issue refunds. Defendant filed a notice of removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Having denied plaintiff's motion to remand, I now turn to defendant's motion to compel arbitration,[1] plaintiff's response, defendant's reply, plaintiff's supplemental memorandum, and defendant's response thereto.

---

[1]The parties have stipulated and I have ordered that defendant's obligation to respond to plaintiff's motion for class certification is stayed pending my decision with respect to defendant's motion to compel arbitration.

Plaintiff Adam Schwartz is or was a customer of defendant Comcast's high speed internet service. Plaintiff alleges in his complaint that defendant breached its contract with him and all class members by providing only intermittent high speed internet services between and including April 7, 2005 and April 17, 2005. During this eleven day period, plaintiff and all class members could not access the internet, and/or their access was interrupted and/or broken. Specifically, plaintiff and all class members could not enjoy internet service, upload or download information, engage in internet commerce, or send or receive email. Plaintiff and all class members paid for these services in advance. Plaintiff asserts that the value of the lost services is between $7.00 and $15.00 depending on each class member's plan.

On September 20, 2003, a Comcast technician installed high speed cable internet at plaintiff's residence in Wayne, Pennsylvania. Defendant alleges that because it is standard procedure for Comcast technicians to provide subscribers with a copy of the current version of defendant's high speed internet service subscriber agreement[2] in connection with his service, plaintiff was a party to defendant's subscriber agreement and thus agreed to arbitrate all claims or disputes arising out of defendant's provision of internet services.[3]

---

[2] The subscriber agreement also is available to all of defendant's subscribers via defendant's website, comcast.net, at http://www.comcast.net/terms/subscriber.jsp.

[3] Section 9 of the subscriber agreement, entitled "Binding Arbitration," discusses at length the parties' agreement with respect resolving disputes regarding service. Section 9(a) provides: "If you have a Dispute . . . with Comcast that cannot be resolved through the informal dispute resolution process described in your Welcome Kit from Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Section rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury."

Section 9(b) defines the term "Dispute" broadly to mean:

Plaintiff alleges that he never received a copy of the subscriber agreement, as it was never

> any dispute, claim or controversy between you and Comcast that has accrued as of the Effective Date or any dispute, claim or controversy that accrues after the Effective Date, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory.

Additionally, Section 9(b) states:

> "Dispute" means any dispute, claim or controversy concerning the validity, enforceability and scope of this Section (with the exception of the limitations and/or provisions provided in subparts 9(e)(2), (h) and (I) below), including any claims that this Section is unenforceable because it violates public policy or the doctrine of unconscionability. Moreover, "Dispute" is to be given the broadest possible meaning that will be enforced.

Section 9(d) provides the procedures for arbitration and states, in relevant part: "Because the service provided to you by Comcast concerns interstate commerce, the Federal Arbitration Act ("FAA"), not state arbitration law, shall govern the arbitrability of all Disputes. However, applicable federal law or the law of the state where you receive the service from Comcast may apply to and govern the substance of any Disputes."

Section 9(e)(2) creates a one year limitations period and provides that all arbitrations between defendant and its subscribers must be litigated on an individual basis:

> ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS-ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED.

However, Section 9(I) permits certain claims to be heard in small claims court or a court of general jurisdiction. Finally, Section 9(h) provides:

> If any clause within this Section (other than the class action waiver clause identified in Section 9(e)(2) above) is found to be illegal or unenforceable, that clause will be severed from this Section, and the remainder of the Section will be given full force and effect. If the class action waiver clause is found to be illegal or unenforceable, then Section 9 will be unenforceable in its totality, and the Dispute will be decided by a court. IN THE EVENT THAT THIS ENTIRE SECTION IS DETERMINED TO BE ILLEGAL OR UNENFORCEABLE FOR ANY REASON, OR IF A CLAIM IS BROUGHT IN A DISPUTE THAT IS

attached to any work order or billing statement, nor was it mailed to him.  In his complaint, plaintiff references a subscription agreement, see Complaint at ¶ 7 ("Comcast's promises were set forth in its subscription agreements and in its communications with the class.  They were also implied."), but he did not specify the document to which he was referring.  Nor did plaintiff attach that document to his complaint, as he claims not to have a copy.  On September 11, 2004 plaintiff signed a Comcast work order with respect to the termination of his cable television service with defendant which contained the language, "I agree to continue to be bound by the current Comcast Subscriber Agreement which constitutes the agreement between Comcast and me for the services.  If other non-installation work was provided, I agree to continue to be bound by the current Comcast Subscriber Agreement."  However, defendant has not presented evidence that it provided notice to plaintiff of any subscriber agreement pertaining to high speed internet service.  Nor has defendant shown that plaintiff agreed to be bound by a subscriber agreement pertaining to high speed internet service, as defendant has not produced evidence that plaintiff signed a similar work order or any document pertaining to high speed internet service which includes or references the subscriber agreement.       Before compelling an unwilling party to arbitrate, the court must "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  PaineWebber, Inc., v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990), overruled by implication on other grounds by Howsam v. Dean Witter

---

    FOUND BY A COURT TO BE EXCLUDED FROM THE SCOPE OF THIS SECTION, YOU AND COMCAST HAVE EACH AGREED TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY.

Reynolds, Inc., 537 U.S. 79, 85 (2002).  The party seeking arbitration bears the burden of establishing a valid agreement to arbitrate.  Goldstein v. Depository Trust Co., 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998).  If there is any doubt concerning the formation of the arbitration agreement, "the matter, upon a proper and timely demand, should be submitted to a jury.  Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."  Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980).  Further, courts must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise."  Id.  In other words, under Pennsylvania law the standard of review for determining whether the parties entered into a valid agreement to arbitrate "is quickly recognized as the standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)."  Id. at 54 n.9.

Before directing the parties to proceed with arbitration, a court must first ascertain whether the parties entered a valid agreement to arbitrate.  Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 264 (3d Cir. 2003).  "[S]uch agreements are upheld only where it is clear that the parties have agreed to arbitrate in clear and unmistakable manner."  Quiles v. Fin. Exch. Co., 879 A.2d 281, 287 (Pa. Super. Ct. 2005) citing Emmaus Mun. Auth. v. Eltz, 204 A.2d 926, 927 (Pa. 1964).  That is, "[t]here must be evidence sufficient to establish the parties' consent to arbitration."  Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1512 (3d Cir. 1994).

To determine whether the parties entered into a valid arbitration agreement, courts look to the relevant state law of contracts.  Alexander, 341 F.3d at 264.  Under Pennsylvania law, it is well-established that when contractual language is clear and unambiguous any rights and obligations expressly set forth in the contract must be recognized and enforced.  See Musselman

v. Sharswood Bldg. & Loan Ass'n, 187 A. 419, 521 (Pa. 1936) ("Where the language used is plain and unambiguous, the rights of the parties must be determined by the provisions of the instruments wherein they committed their agreement to writing."); see also Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 388 (Pa. 1986) ("The law will not imply a different contract than that which the parties have expressly adopted."). It is also well-established under Pennsylvania law that "contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective or whether the agreements embodied reasonable or good bargains." Simeone v. Simeone, 581 A.2d 162, 165 (Pa. 1990).

Plaintiff argues that I should not compel arbitration pursuant to the subscriber agreement because: (1) there was no valid agreement or meeting of the minds to arbitrate such a dispute; (2) the dispute falls outside the scope of the arbitration provisions; and (3) the subscriber agreement is an unconscionable contract of adhesion. Because I find that defendant has not met its burden of establishing a valid agreement to arbitrate, I will deny defendant's motion to compel arbitration without reaching the questions of scope and unconscionability.

Plaintiff argues that there was no valid agreement or meeting of the minds to arbitrate this dispute because he had no knowledge that the subscriber agreement existed. In support of this argument, plaintiff alleges that he did not sign the subscriber agreement, he did not know that the subscriber agreement was on the internet, and he did not receive a copy of the subscriber agreement with his bills. In its attempt to establish that plaintiff indeed was aware of the subscriber agreement and the arbitration provisions contained therein, defendant offers a boilerplate subscriber agreement and evidence of a policy for all Comcast technicians to hand

6

this boilerplate agreement to all consumers prior to service installation. Defendant further offers plaintiff's signature under a reference to the subscriber agreement on a work order pertaining to cable television service.

Giving plaintiff the benefit of all reasonable doubts and inferences and considering the evidence set forth by defendant, I conclude that there is insufficient evidence of a clear and unmistakable agreement between these two parties to arbitrate claims and disputes arising out of high speed internet service. Though the language in the boilerplate subscriber agreement establishing an arbitration agreement between contracting parties is clear and unambiguous, defendant has not established that plaintiff ever received notice of any subscriber agreement pertaining to his high speed internet service. The existence of a policy to hand the subscriber agreement to all consumers does not constitute proof of actual notice to this particular plaintiff. Also, that plaintiff signed a Comcast work order on September 11, 2004 under language referencing a subscriber agreement is of no consequence here, as that work order pertained to the uninstallation of plaintiff's cable television service and made no reference to plaintiff's high speed internet service.

Defendant also argues that plaintiff admitted in his complaint, his amended complaint, and his motion for class certification that he was a party to the subscriber agreement. Though plaintiff referred generally to a "subscription agreement" in those documents, plaintiff never specified the document to which he was referring. Nor did plaintiff attach a copy of the document to which he referring. Defendant has not produced evidence that in any way contradicts plaintiff's assertion that he had no knowledge of Comcast's high speed internet service subscriber agreement, e.g., plaintiff signed a work order or any document pertaining to

7

high speed internet service which includes or references that document.  Giving plaintiff the benefit of all reasonable doubts and inferences, I cannot conclude that plaintiff's non-specific references to a "subscription agreement" constitutes an admission that he was a party to Comcast's subscriber agreement and evinces plaintiff's clear, express, and unequivocal intent to arbitrate his claims.

Because defendant has failed to meet its burden of establishing a valid agreement to arbitrate, defendant's motion will be denied.  The parties should resume briefing on the motion for class certification.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ADAM SCHWARTZ                  :         CIVIL ACTION
                               :
v.                             :
                               :
COMCAST CORP.                  :         NO. 05-2340

<u>ORDER</u>

AND NOW, this 8th day of November 2006, upon consideration of defendant's motion to compel arbitration and plaintiff's brief in opposition thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendant's motion to compel arbitration is DENIED.  Defendant will respond to plaintiff's motion for class certification within 30 days from date.



                    s/Thomas N. O'Neill, Jr.
                    THOMAS N. O'NEILL, JR., J.